**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | x | |
| ZIESEMER, | x | |
| | x | |
| plaintiff, | x | |
| | x | Civil Action No. 04-6429 |
| v. | x | |
| | x | **OPINION** |
| FIRST UNUM LIFE INS. CO., et al., | x | |
| | x | |
| defendants. | x | |
| _____ | x | |

**CHESLER, District Judge**

**I.      INTRODUCTION**

This matter comes before the Court on competing motions for partial summary judgment.

Defendants First Unum Life Insurance Company and UnumProvident Corporation (collectively

"First Unum") argue that the benefit plan at issue is covered by the Employees Retirmeent

Income Security Act ("ERISA"), 20 U.S.C. § 1001 et seq. and, therefore, plaintiff's state claims

are preempted and should be dismissed.  Plaintiff argues (1) the Geldermann Plan is not an

"employee" benefit plan subject to ERISA because it did not cover employees and was not

"established or maintained" by Geldermann; and, alternatively, (2) if the Geldermann Plan is an

employee benefit plan, it is subject to the Department of Labor's Safe Harbor regulations, 29

C.F.R. § 2510.3-1(a)(1), which remove it from ERISA's jurisdiction.  For the reasons that

follow, plaintiff Ziesemer's motion for partial summary judgment is **DENIED**; and defendant

First Unum's motion for partial summary judgment is **GRANTED**, and plaintiff's state law

1

claims shall be dismissed.

## II.    FACTS

Defendant, Geldermann, Inc., a division of Man Financial, is a clearing house for commodities traders on many exchanges, including the New York Mercantile Commodity Exchange Center, New York and Chicago Cotton, Sugar, Coffee, and Cocoa Exchanges. (Deposition of Diana Santana ("Santana Dep.") at 40:12-41:12.)  Plaintiff Lana Ziesemer worked as a "self-employed options trader" on the New York Cotton exchange and contracted with Geldermann for clearing services.  (Affidavit of Lana Ziesemer ("Ziesemer Aff.") at ¶ 1-2.) Geldermann kept track of plaintiff's trades, earned a commission on trades she executed through her Geldermann account, and issued her IRS 1099s at years' end for the net earnings generated through her account.  (Id. at ¶ 3.)

### A.    The History of the Geldermann Plan

In 1998, Geldermann applied to First Unum for a policy of group long term disability ("LTD") insurance to all of its full time employees, full-time traders, and full-time brokers.[1] (Affidavit of John Cicchelli ("Cicchelli Aff.") ¶ 3.)[2]  In a an April 1998[3] letter to First Unum,

---

[1]Geldermann applied to First Unum for the issuance of a group LTD policy through its agent/broker, Warren Rosen & Co., Inc. ("Rosen"), and C&B Consulting Group, Inc. ("C&B"), a general broker.  C&B was a "broker's broker," through whom Rosen, on behalf of Geldermann, applied to First Unum for the group LTD policy.  (Cicchelli Aff., n.1.)

[2]Plaintiff argues the Court should disregard the Cicchelli Affidavit because it contains information not within his personal knowledge and impermissible legal argument.  The Court finds the content of the affidavits is for the most part appropriate, but will only consider non-argumentative portions of these affidavits.

[3]The year on this correspondence, "4/20/97," is a typographical error.  The correct year of the correspondence is 1998.  (Ciccelli Aff., n.2.)

insurance broker Arthur Hall sent a list of eligible participants on behalf of Geldermann, listed

some of its employees who were paid on a 1099 basis, and stated:

> The plan is for all active full time traders earning at least 80% of
> their income from the respective companies.  There are traders
> working part-time on a 1099 basis that are not eligible for the plan
> because they do not earn 80% of their income from this employer.

(Id., Ex. 1.)  At her deposition, Ms. Santana stated that brokers and traders covered by the policy

are "customers," rather than employees, of Geldermann, Inc.  (Santana Dep. at 11:21-12:7;

34:13-18; 35:9; 47:20-48:4.)  She stated:

> The policy was not for employees.  The policy was as a customer
> service benefit for local traders on the trading floor.  That was
> something we tried to accommodate them to get a lower rate on
> insurance.  It was not for employees.  You had to be a self-
> employed individual to be on this policy.  It is not – it was not an
> employee policy.

(Id. at 9:4-13.)  She further stated:

> A floor trader is, as I said before, an individual who basically is
> trading for himself.  He does not have a backer, he does not have
> an employer.  He is basically self employed.

(Id. at 67:2-7.)   In the April 1998 letter, Mr. Hall also requested that First Unum confirm that its

1099 employees would be covered.  (Cicchelli Aff., Ex. 1.)

In an April 24, 1998 letter, First Unum responded that all of Geldermann's 1099

employees were eligible for coverage, that First Unum would cover beneficiaries' prior year's

earning as well as income related to bonus and commissions, and requested an application, "First

Month Binder Check," and client information.  (Id. at ¶ 4, Ex. 2.)

By correspondence dated April 29, 1998, Geldermann, through its agent, Warren Rosen,

sent First Unum a Client Information form, census sheets that listed eligible participants, and a

check for $8,091.84 made out to "Geldermann & Co. Long Term Disability policy" for payment of the first premium. (Id. at ¶¶ 5-7, Ex. 4.) Through its application, Geldermann identified Alfred Mascia, Geldermann's Vice-President, as the company's "decision-maker for the company's employee benefits," and Diana Santana, an employee in the administrative department, as the "Plan Administrator/Correspondent." (Id. at ¶ 7, Ex. 5.) In her role as administrator, Ms. Santana stated she deducted payment from traders' accounts, issued the premium check to First Unum, and furnished enrollees with forms necessary to make claims under the Geldermann Plan. (Deposition of Diana Santana ("Santana Dep.") at 17:13-18:2.) She stated she worked with Geldermann Inc.'s insurance broker, Mr. Rosen, to furnished financial information related to enrollees. (Id.)

In its application, Geldermann, Inc. Further stated that its full time employees and traders were eligible and its part time employees and traders were excluded from coverage. (Cicchelli Aff. at ¶ 8, Ex. 5.) It described full time employees as those who worked at least 20 hours. (Id.) It opted not to have a "Waiting Period" before eligible beneficiaries receive coverage and for the employee to pay 100% of the cost. (Id.) It informed First Unum that the Geldermann Plan would replace coverage from its current benefits plan issued by Sun Life. (Id.) Geldermann, Inc. further stated that coverage should be calculated using salary, commission, and bonuses, as well as 1099 income earned through Geldermann, Inc. (Id.)

In response to the First Unum application, Geldermann also submitted with its application a list of "eligible employees" within the Geldermann Plan. (Cicchelli Aff. at ¶ 9, Ex. 6.) Geldermann listed the names of approximately 180 individuals along with various information such as job titles, including traders, brokers, and clerks, the number of hours worked per week,

and enrolled status.  (Id.)  Plaintiff Lana Ziesemer was listed as a "trader" working 38 hours per

week with basic monthly earnings of $13,072.81.  (Id.)

By correspondence dated June 2, 1998, First Unum sent Mr. Rosen administrative kits,

master contracts, initial premium statements, and booklet drafts with respect to the Geldermann

Plan.  (Id. at ¶ 10.)  These documents contained forms used to enroll eligible participants in the

Geldermann Plan.  (Id.)  Among these documents was an employee booklet, which stated in part

that Geldermann is "responsible for making the changes on the bill and calculating the

appropriate premium."  (Id. at ¶ 10, Ex. 8.)  Geldermann Inc. approved the draft Employee

Booklet, which was entitled "GELDERMANN, INC. Your Long Term Disability Plan."  (Id. at ¶

11, Ex. 10.)

The "**BENEFITS AT A GLANCE**" section of the Employee Booklet describes the

Geldermann Plan.  It provides:

> **ELIGIBLE GROUP(S):**
> All Full Time Employees, Full Time Traders and Full Time
> Brokers in active employment
> **MINIMUM HOURS REQUIREMENT**
> Employees must be working at least 20 hours per week.
> **WAITING PERIOD**
> For employees entering an eligible group on or before May
> 1, 1998: None.
> For employees entering an eligible group after May 1,
> 1998: First of the month coincident with or next following
> date of hire.
> You must be in continuous active employment in an
> eligible group during the specified waiting period.
> **ELIMINATION PERIOD**
> 90 days

(Id. at ¶ 12, Ex. 10 at page 7.)  The booklet further provides:

> *Throughout this certificate:*

5

> *YOU means an employee who is eligible for UNUM coverage.*
>
> *WE, US and OUR means First UNUM Life Insurance Company.*
>
> *EMPLOYEE means a citizen or permanent resident of the United States or Canada who is in active employment in the United States with the Employer unless an exception is applied for and approved in writing by UNUM.*
>
> *EMPLOYER means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.*
>
> *INSURED means any person covered under a plan.*

(Id. at ¶ 13, Ex. 10 at page 9).  The "**GLOSSARY**" section of the Employee Booklet provides the following additional definitions:

> **EMPLOYER** means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.
> . . .
> **POLICYHOLDER** means the Employer to whom the policy is issued.

(Id. at ¶ 13, Ex. 10 at page 54-57.)  The Employee Booklet also provides the following definition of disability:

> **HOW DOES UNUM DEFINE DISABILITY?**
> You are disabled when UNUM determines that:
> -you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> -you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

(Id. at ¶ 13, Ex. 10 at page 17.)

The Geldermann Plan Employee Booklet defines "**MONTHLY EARNINGS**" as follows:

> **WHAT ARE YOUR MONTHLY EARNINGS?**

6

**Full Time Traders**
"Monthly Earnings" means your average monthly income from
your Employer just prior to your date of disability.  It includes
earnings from the miscellaneous 1099 tax form.

**All other Full Time Employees**
"Monthly Earnings" means your gross monthly income from your
Employer in effect just prior to your date of disability.  It includes
your total income before taxes and any deductions made for pre-tax
contributions to a qualified deferred compensation plan . . . .  It
includes income actually received from commissions and bonuses
just prior to your date of disability but does not include renewal
commissions, overtime pay or any other extra compensation, or
income received from sources other than your Employer.

(Id. at ¶ 14, Ex. 10 at page 21.)  With respect to the monthly benefit under the Geldermann Plan,

the Employee Booklet states:

**MONTHLY BENEFIT:**
60% of monthly earnings to a maximum benefit of $10,000 per
month.

Your payment may be reduced by deductible sources of income
and disability earnings.  Some disabilities may not be covered or
may have limited coverage under this plan.

(Id. at ¶ 15, Ex. 10 at page 24.)  Only Geldermann, Inc. as the Employer and Policyholder under

the Geldermann Plan, was able to amend the Geldermann Plan and only Geldermann, Inc. or

First Unum could cancel the policy.  (Id. at ¶ 16.)  The Employee Booklet provides that

Geldermann, Inc., as the Policyholder, was responsible for the payment of premiums due under

the policy and, in the event of default, the policy terminated automatically after a grace period.

(Id.)

Notably, the Employee Booklet included a provision that advised participants of their

rights under ERISA.  It provided:

7

As a participant in this plan, you are entitled to certain rights and
protections under the Employee Retirement Income Security Act of
1974 (ERISA).  ERISA provides that all plan participants shall be
entitled to:
-examine, without charge, at the Plan Administrator's office and at
other specified locations all plan documents including insurance
contracts . . . ;
-obtain copies of all plan documents and other plan information
upon written request to the Plan Administrator.  The Plan
Administrator may make a reasonable charge for the copies; . . .

In addition to creating rights for plan participants, ERISA imposes
duties upon the people who are responsible for the operation of the
employee benefit plan.
. . .
No one, including your Employer, or any other person, may fire
your or otherwise discriminate against you in any way to prevent
you from obtaining a benefit or exercising your rights under
ERISA.
If your claim for a benefit is denied, in whole or in part, you must
receive a written explanation of the reason for the denial.  You
have the right to have your claim reconsidered.
Under ERISA, there are steps you can take to enforce the above
rights. For instance, if you request materials from the plan and do
not receive them within 30 days, you may file suit in a federal
court.  In such a case, the court may require the Plan Administrator
to provide the materials . . . .
• • •
If you have any questions about your plan, you should contact the
Plan Administrator.

(Id. at ¶ 17, Ex. 10 at page 49-50.)  The Employee Booklet further advises participants regarding

the steps to be taken to appeal an adverse determination in accordance with ERISA.  (Id. at ¶ 18,

Ex. 10 at page 51-52.)  The Summary Plan Description ("SPD") section of the Employee

Booklet, lists the plan's name, the Plan Administrator, and the agent designated for service of

process as Geldermann, Inc.  (Id.)

    By correspondence dated April 3, 2001, Robert P. Schlossberg, Senior Vice President of

Geldermann, Inc. wrote to Mr. Rose, advising:

> Effective immediately, please do not accept any additional
> employees, or traders or brokers in active employment, under the
> above-referenced long term disability insurance policy without
> further instructions from me.  In addition, please forward to my
> attention a current list of insured eligible for benefits under the
> policy . . . .

(Id. at ¶ 23, Ex. 11.)  The record further contains a memo, apparently issued by Geldermann, Inc.,

to all participants in the "Geldermann, Inc. Long Term Disability Plan" that stated:

> First Unum Life Insurance Co. has advised us of an extraordinary
> rate increase for our group long term disability insurance plan that
> is scheduled to become effective on June 1, 2001, the renewal date
> for the plan.  Unfortunately, in light of this rate increase and the
> administrative burdens of maintaining the plan, we have decided to
> discontinue the policy with First Unum effective May 31, 2001.
> Consequently, please be advised that you will no longer be covered
> by the plan following May 31, 2001.

(Id. at ¶ 24, Ex. 12.)

###### B.    Plaintiff's Claim for Benefits Under the Geldermann Plan

In January of 1999, plaintiff claims she became disabled due to neurotoxic poisoning

caused by exposure to pesticides.  (Ziesemer Aff. at ¶ 6.)  In August 1999, she filed a claim for

long-term disability benefits running from January 1999 under the "Geldermann Plan."  (Id. at ¶

6.)  The Geldermann Plan covered 60% of an insured's earnings for a maximum benefit of

$10,000 per month.  (Ziesemer Aff. at  ¶ 6, Ex. A; Cicchelli Aff. at ¶ 4.)  In 1998, plaintiff earned

in excess of $500,000, making her eligible for the maximum benefit under the Geldermann Plan.

(Ziesemer Aff. at  ¶ 6.)  Defendants approved plaintiff's claim and paid her benefits from April

1999 through March 2004, when they denied her claim.  (Id. at ¶ 7.)

###### C.    Procedural History

Plaintiff filed the complaint in this action on December 29, 2004, seeking recovery of benefits under ERISA, 29 U.S.C. § 1001, et seq. [Docket Entry No. 1.]  On May 24, 2005, plaintiff filed an Amended Complaint that included claims for breach of contract (Count 1), breach of implied duty of good faith and fair dealing (Count 2), estoppel (Count 3), breach of fiduciary duty (Count 4), and bad faith claims practices (Count 5), and pleaded ERISA claims in the alternative (Count 6).  [Docket Entry No. 17.]  The court now turns to the competing summary judgment motions.

## III.    DISCUSSION

### A.    Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). Rule 56(e) of the Federal Rules of Civil Procedure requires that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324; Dowling v. City of Philadelphia, 855 F.2d 136, 142-43 (3d Cir. 1988).

### B.    Definition of "Plan" under ERISA

Plaintiff argues the Geldermann Plan was not "established or maintained" by Geldermann and, therefore, is not subject to ERISA.  She argues the Geldermann plan was intended to be

limited to brokers and traders who were paid on a 1099 basis.  (Pl. Br. at 11.)  Moreover, she

argues that Geldermann was uninvolved in the issuance and administration of the Geldermann

Plan policy, as evidenced by (1) the lack of direct communication between Geldermann and First

Unum in negotiating the policy; (id. at 11-12); (2) the existence of an identical policy issued to

Saul Stone & Co., showing that First Unum, not Geldermann, was dictating the terms of the

policy (id. at 11-12); and (3) the language of the policy, which gives First Unum authority to set

the premium rate and other terms of the policy (id. at 12-13).  Plaintiff essentially argues that the

Geldermann Plan is not a true ERISA plan set up by an employee for the benefit of its

employees, but rather that Geldermann, Inc. a mere "conduit for its traders to obtain disability

insurance at a lower group rate."  (Id. at 12.)  Thus, plaintiff argues, First Unum has not complied

with ERISA and should not be entitled to its protections.

### i.      "Employee Welfare Benefit Plan" under 29 U.S.C. § 1002(1)

ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which . . . [is] established or maintained
> by an employer or by an employee organization, or by both, to the
> extent that such plan, fund, or program was established or is
> maintained for the purpose of providing for its participants or their
> beneficiaries, through the purchase of insurance or otherwise, (A)
> medical, surgical, or hospital care or benefits, or benefits in the
> event of sickness, accident, disability, death or unemployment, . . . .

29 U.S.C. § 1002(1).[4]  A plan exists when, "from the surrounding circumstances, a reasonable

---

[4]A "participant" under ERISA means:
> any employee or former employee of an employer, or any member
> or former member of an employee organization, who is or may
> become eligible to receive a benefit of any type from an employee
> benefit plan which covers employees of such employer or members
> of such organization, or whose beneficiaries may be eligible to

person could ascertain the intended benefits, a class of beneficiaries, the source of financing and procedures for receiving benefits."  Smith v. Hartford Ins. Group, 6 F.3d 131 (3d Cir. 1993).

In its opposition to defendants' motion, plaintiff argues the Geldermann Plan is not an ERISA plan because it does not cover Geldermann "employees," but only brokers and traders who were independent contractors paid by 1099.  Plaintiff cites the testimony of Ms. Santana, who stated that traders were not employees of the company.  To resolve whether or not the eligible beneficiaries were indeed "employees," the Court must interpret the Geldermann Plan.  See Ruttenberg v. United States Life Ins. Co., 413 F.3d 652, 664 (7th Cir. 2005) (holding that determination of whether or not beneficiaries are "employees" of a policyholder is not an issue of statutory interpretation, "rather it presents a question of contract construction.").  Thus, the Court turns to the terms of the Geldermann Plan and the documents surrounding it.

The Geldermann Plan unmistakably includes traders as among its eligible participants.  It describes "eligible groups" as "[a]ll Full Time Employees, Full Time Traders and Full Time Brokers in active employment."  It describes the income for "Full Time Traders" as the "average monthly income from your Employer just prior to your date of disability.  It includes earnings from the miscellaneous 1099 tax form."  (Cicchelli Aff. at ¶ 14, Ex. 10 at page 21.)  To the extent this language can be seen as ambiguous, Geldermann Inc.'s application resolves any confusion.  In its application, Geldermann, Inc. described "eligible employees" to mean "full time employees and full time traders."  (Id., Ex. 5.)  Through its brokers, Geldermann Inc. requested that traders

---

receive any such benefit.
29 U.S.C. § 1002(7).  A "beneficiary" under ERISA is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

who were compensated by Geldermann, Inc. be covered by the Geldermann Policy and, indeed, sought confirmation from First Unum that its 1099 employees would be covered. (Cicchelli Aff., Ex. 1.) Presumably, the plaintiff considers herself an "eligible employee" under the Geldermann Plan as she applied for and received disability coverage pursuant to its terms. See Ruttenberg, 413 F.3d at 664 (addressing plaintiff's argument that "employee" under a benefits policy did not include independent contractors who were compensated on a 1099 basis, and stating that plaintiff "presumably agrees that he must be considered an 'employee' as the policy uses that term; otherwise, he would be ineligible for any benefits."). Given the unambiguous terms of the Geldermann Plan, there can be no question that the parties to the plan – Geldermann, Inc. and First Unum – intended the plan to cover traders like Ms. Ziesemer. A reasonable fact finder could not interpret the record differently. For these reasons, the Court holds that Ms. Santana's testimony does not create a material issue of fact as to whether or not a reasonable employee would have considered the Geldermann Plan to be governed by ERISA.

### ii.    ERISA's "Safe Harbor" Provisions Under 29 C.F.R. § 2510.3-1(a)(1)

Plaintiff argues that, even if the Geldermann Plan is subject to ERISA, the Department of Labor's "Safe Harbor" provisions regulations operate to take it outside ERISA's purview. 29 C.F.R. § 2510.3-1(a)(1) further narrows ERISA's definition of a an "employee welfare benefit plan" by excluding certain group insurance plans that would otherwise qualify under 29 U.S.C. § 1002(1). The so called "Safe Harbor" provisions provide that:

> the terms 'employee welfare benefit plan' . . . shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee

> organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  A plan that meets the Safe Harbor provision's standards will be deemed not to have been "established or maintained by the employer," and therefore will not be governed by ERISA.  Schneider v. UNUM Life Ins. Co. of Am., 149 F. Supp. 2d 169, 176 (E.D. Pa. 2001). It is uncontested that Geldermann, Inc. does not contribute to the plan, participation is voluntary, and Geldermann, Inc. receives no consideration for plan enrollees.  The only issue, therefore, is whether or not Geldermann Inc. "endorsed" the Geldermann Plan under subsection 3 of the Safe Harbor provisions.

The so-called "endorsement" provision embodied in subsection 3 of the Safe Harbor Provision presents an issue of "employer neutrality."  That is, "plans are not subject to ERISA in cases where employers are disconnected from the program such that it is clear that the program represents a 'third party's offering' to employees."  Schneider, 149 F. Supp. 2d at 177 (citing Thompson v. American Home Assurance Co., 95 F.3d 429, 436 (6th Cir. 1996)).  In Johnson v. Watts Regulator Co., 63 F.3d 1129 (1st Cir. 1995), the First Circuit stated:

> [A]n employer will be said to have endorsed a program within the

14

> purview of the . . . safe harbor regulation if, in light of all the
> surrounding facts and circumstances, an objectively reasonable
> employee would conclude on the basis of the employer's actions
> that the employer had not merely facilitated the program's
> availability but had exercised control over it or made it appear to
> be part and parcel of the company's own benefit package.

Id. at 1135.  The Johnson court further stated:

> as long as the employer merely advises employees of the
> availability of group insurance, accepts payroll deductions, passes
> them on to the insurer, and performs other ministerial tasks that
> assist the insurer in publicizing the program, it will not be deemed
> to have endorsed the program under section 2510.3-1(j)(3).

Id. at 1134.  Finally, the Johnson court explained that the question of endorsement under the Safe

Harbor Provision is a mixed question of law and fact:

> In some cases the evidence will point unerringly in one direction so
> that a rational factfinder can reach but one conclusion.  In those
> cases, endorsement becomes a matter of law. In other cases, the
> legal significance of the facts is less certain, and the outcome will
> depend on the inferences that the factfinder chooses to draw. In
> those cases, endorsement becomes a question of fact.

Id. at 1135 n.3.  While the Court of Appeals for the Third Circuit has not specifically adopted

Johnson, court's within the Circuit have used its reasoning in determining Safe Harbor issues.

See, e.g., Schneider, 149 F. Supp. 2d at 177; Selkridge v. United of Omaha Life Ins. Co., 221 F.

Supp.2d 579, 583 (D.V.I. 2002); Byard v. QualMed Plans for Health, Inc., 966 F. Supp. 354, 359

(E.D. Pa. 1997).  The Court agrees with the reasoning set forth in Johnson and the cases adopting

it and, therefore, shall apply Johnson's principles to the instant matter.

    The face of the Geldermann Plan shows that Geldermann, Inc. endorsed it.  The plan

itself is embossed with the words "Geldermann, Inc. Your Policy Number 460730 . . . Your Long

Term Disability Plan."  (Cicchelli Aff., Ex.10.)  See, e.g., Schneider, 149 F. Supp. 2d at 181

(finding endorsement where employer took no part in plan's administration but allowed its logo

to be printed on promotional material and made reference to the plan as its own).  Moreover, the

Geldermann Plan includes express language regarding beneficiaries' rights and remedies under

ERISA.  See Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1154 (9th Cir. 2000) (holding

that a policy "tended to prove that [the employer] and UNUM intended to create an ERISA plan

because the Policy specifically refers to ERISA.").  Geldermann, Inc. designated its employee to

be the "Plan Administrator" and performed administrative functions, such as calculating and

paying the premiums due.  Only Geldermann, as the Employer and Policyholder, is able to

amend, alter, or terminate the Geldermann Plan.  Indeed, Geldermann Inc. cited the

administrative burdens, along with an increase in the premium, as a reason for terminating the

Geldermann Plan.  Notably, Mr. Rosen's cancellation letter directs First Unum not to accept any

"additional employees," demonstrating the parties' understanding that traders were considered

"employees" for the purpose of coverage under the Gledermann Plan.  Moreover, the SPD

designates Geldermann, Inc. as the "Plan Administrator" and agent for service of legal process.

See Selkridge, 221 F. Supp. 2d at 583-84 (holding employer endorsed plan where the plan's title

includes the employer, the plan details employee's ERISA rights, and the plan the employer as

the plan's administrators, charged it with submitting claims to the defendant on behalf of

employees, and acting as agents for service of legal process).  In view of these considerations, the

Court finds that a reasonable plan participant could only conclude that Geldermann, Inc.

endorsed the Geldermann Plan.

Plaintiff argues that Ehrenspeck v. Spear, Leeds & Kellogg, 389 F. Supp. 2d 485

(S.D.N.Y. 2005) supports her position that the Geldermann Plan is not an "employee benefit

plan" or, if it is, the Safe Harbor provisions operate to take it out of the purview of ERISA.  In

Ehrenspeck, plaintiff sued the plan administrator in state court seeking disability benefits.  Id. at

486.  Plaintiff was a futures trader who cleared trades through Spear, Leeds & Kellogg ("SLK")

and became enrolled in the LTD plan, which First Unum issued.  Id. at 487.  When plaintiff was

denied coverage from the plan, he sued SLK in state court and defendant removed the case to

federal court.  Id. at 488.

Plaintiff moved to remand the case, arguing it was not an "employee welfare benefit

plan" under 29 U.S.C. § 1002(1) or, alternatively, that the Safe Harbor provision of 29 C.F.R. §

2510.3-1(a)(1) took it outside the purview of ERISA.  Id. at 489-490.  The district court held that

defendant did not carry its burden of showing the SLK plan was subject to ERISA and remanded

the case.  It reasoned that SLK never made contributions to the plan, no SLK employees were

covered under the plan and, therefore, there is no evidence that the plan was an "employee

welfare benefit plan" under 29 U.S.C. § 1002(1).  Id. at 490.  The Court also rejected First

Unum's argument that SLK "endorsed" the plan, finding a single letter to First Unum seeking

clarification of payroll deductions to be insufficient involvement.  Id.

Unlike SLK in the Ehrenspeck case Geldermann Inc. defined "eligible employees" to

mean "Full time brokers and traders."  The census that Geldermann Inc. submitted to First Unum

with its application materials describes a number of participants that meet this definition.  It is

not clear whether or not such a clear definition of eligible participants was available to the

Ehrenspeck court.  Moreover, Geldermann Inc. demonstrated much more involvement in the

institution, administration, and ongoing management of the Geldermann Plan.  For these reason, the Court finds <u>Ehrenspeck</u> distinguishable from the instant matter.

The Court further disagrees with plaintiff's argument that Geldermann Inc. had less involvement in the Geldermann Plan than the employee in <u>Johnson</u> and, therefore, is subject to the Safe Harbor provisions.  In <u>Johnson</u>, the Court of Appeals for the First Circuit concluded the employer there "eschew[ed] any role in the substantive aspects of program designation and operation" because it had "not a hand in drafting the plan, working out its structural components, determining eligibility for coverage, interpreting policy language, investigating, allowing and disallowing claims, handling litigation, or negotiating settlements."  63 F.3d at 1136.  Unlike the employer in <u>Johnson</u>, Geldermann, Inc. made elections that tailored the policy for the benefits of its participants and, therefore, it had a "hand in drafting the plan."  <u>Id.</u>

Geldermann, Inc.'s conduct sets it apart from the employer organization in <u>Johnson</u>. Geldermann, Inc. compiled the list of eligible participants from among its 1099 employees and advised First Unum that these participants include "full time employees and full time traders." (Cicchelli Aff., Ex. 5.)  It described excluded employees as "Part time employees and part time traders."  (<u>Id.</u>)  By describing eligible and ineligible employees, and the method for calculating "basic monthly earnings" under the Geldermann Plan, Geldermann Inc. played a significant role in defining the contours of the Geldermann Plan.  <u>See</u> <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207, 1213 (11th Cir. 1999) (finding endorsement where employer picked insurer, decided on key policy terms, regulated employee eligibility, incorporated terms into summary description of its own cafeteria plan, and retained power to alter compensation reduction for tax purposes); <u>Ackerman v. Fortis Benefits Ins. Co.</u>, 254 F. Supp. 2d 792, 811 (S.D. Ohio 2003)

18

(finding that employer "endorsed" its plan where it "crafted, at least in part, a policy of its own making."). Thus, Geldermann Inc. hardly "eschew[ed] any role in the substantive aspects of program designation" under the <u>Johnson</u> case.

In light of these considerations, a rational fact finder could only conclude that the control that Geldermann, Inc. exercised over the terms and operation of the Geldermann Plan exceeded that described in Section 2510.3-1(j)(3) and, therefore, the Safe Harbor provisions do not take the Geldermann Plan outside the purview of ERISA. In light of this holding, the Court shall dismiss plaintiff's state law claims as preempted by ERISA.

IV.     **CONCLUSION**

For the foregoing reasons, plaintiff Ziesemer's motion for partial summary judgment shall be **DENIED**; defendants' motion for partial summary judgment shall be **GRANTED**; and plaintiff's state law claims (Counts 1 through 5) shall be **DISMISSED**. The Court will issue an appropriate Order.


Dated: August 18, 2006

                                        /s/Stanley R. Chesler
_____
                                        United States District Judge

19