<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LANA ZIESEMER, | : |
| Plaintiff, | : Civil Action No. 04-6429 (SRC) |
| v. | : |
| | : **OPINION** |
| FIRST UNUM LIFE INSURANCE COMPANY, et al., | : |
| Defendants. | : |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court on the motion to dismiss the Amended Complaint for failure to exhaust administrative remedies or, in the alternative, to remand to First Unum, by Defendants First Unum Life Insurance Company and UnumProvident Corporation (collectively, "Defendants" or "First Unum"). For the reasons set forth below, these motions will be **DENIED**.

**BACKGROUND**

This case arises out of a dispute over payment of a claim under a group long term disability insurance policy issued by First Unum to Plaintiff Lana Ziesemer. The background to this case was described in this Court's previous Opinion of August 23, 2006 and will not be repeated here.

## ANALYSIS

**I.     Legal Standards**

    **A.     <u>Rule 56 Motion for Summary Judgment</u>**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003) (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.  Defendants' motion**

As a threshold matter, this Court must determine the procedural posture of this motion. Although Defendants have called their motion a "motion to dismiss," and argue for dismissal of the Amended Complaint, their argument does not attack the sufficiency of the pleading. Rather,

3

Defendants ask this Court to examine the evidence of record and, in the absence of any genuine issues of material fact, find that Defendants are entitled to judgment as a matter of law. As such, this Court construes this as a motion for partial summary judgment, pursuant to FED. R. CIV. P. 56, on the issue of failure to exhaust administrative remedies. See Travel All Over the World v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996) ("The district court may look beyond the technical nomenclature of motions to dismiss to reach the substance of the movant's contentions.")

ERISA provides: "In accordance with regulations of the Secretary, every employee benefit plan shall . . . (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The relevant regulation is 29 C.F.R. § 2560.503-1.

There is no dispute that, under Third Circuit law, federal courts generally will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990); Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 252 (3d Cir. 2002). Defendants contend that, when Plaintiff commenced this suit, she had failed to exhaust the available remedies. Plaintiff contends that she had done so: she had appealed First Unum's denial of benefits and First Unum had not issued a decision on her appeal within the 120-day period required by the relevant regulation, and so her appeal is deemed denied.

Key provisions of 29 C.F.R. § 2560.503-1 were significantly revised, effective for claims filed on or after January 1, 2002. See 66 Fed. Reg. 35886 (July 9, 2001), 65 Fed. Reg. 70246

4

Case 2:04-cv-06429-SRC-MAS   Document 51   Filed 07/20/07   Page 5 of 12 PageID: 2409

(Nov. 21, 2000).  Because Plaintiff filed her original claim in 1999, this Court looks to 29 C.F.R. § 2560.503-1 as it stood prior to the revisions.  The regulation then in force states:

> (h) Decision on review.
>
> (1) (i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.
>
> . . .
>
> (4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review is not furnished within such time, the claim shall be deemed denied on review.

29 C.F.R. § 2560.503-1 (1999) (amended 2000).

There is no dispute that this regulation gives Defendants a maximum of 120 days to issue a decision on Plaintiff's appeal of her denial of benefits, that 120 days had elapsed by the time Plaintiff commenced this suit on December 29, 2004, and that Defendants had not then, or ever, issued a decision on Plaintiff's appeal.  It appears to be a straightforward matter to apply § 2560.503-1(h)(4) to determine that, because the decision on review was not furnished within the 120 days, the claim shall be deemed denied on review.

Defendants make several related arguments in attempting to escape this conclusion, primarily contending that the period should be tolled, both because they had to wait for Plaintiff to respond to a request for additional records, and because Plaintiff herself halted the review process.  Defendants also argue that they have substantially complied with the regulation, and that this should impact the Court's determination.

5

While these contentions involve questions of fact, there are no material disputes that preclude judgment as a matter of law. Even if the running of the 120-day period was tolled because of the request for additional records, Defendants concede that, at the latest, the period ended on December 13, 2004, still prior to the date on which Plaintiff commenced suit. (Defs.' Br. 12.)

Defendants contend as well that Plaintiff "unilaterally stopped the administrative review process before it could be completed. . ." (Defs.' Br. 11.) This assertion is unpersuasive for several reasons. First, Defendants do not even explain how an insured brings an insurance company's review process to a halt, no less point to evidence that she did so. Defendants have not at any point provided even a colorable justification to this Court for First Unum's failure to complete its review of the appeal.

Second, the evidence Defendants offer does not support their contention. Defendants point to the November 16, 2004 letter sent by Plaintiff's attorney, which states that, as the 120 days had run and no decision had been received, "this claim shall be deemed denied on review." (Del Mauro Cert. Ex. 23.) This letter did not stop First Unum from doing anything. Rather, the letter expressed an opinion and gave notice to First Unum that it should expect a lawsuit: "We will prepare for litigation accordingly . . ." (Id.)

Third, the record suggests that Defendants' contention – that the November 16 letter somehow halted the review – is at best disingenuous. Plaintiff points to First Unum's letter of December 6, 2004. This letter notes receipt of the November 16 letter and states that: 1) First Unum has referred the file for review by an outside specialist in neurotoxicology, which "is still pending;" and 2) "we have not been informed that you have commenced litigation on this claim

and therefore we are continuing our review." (Rafel Cert. Ex. 38.) Thus, rather than showing that the November 16 letter stopped First Unum's review in any way, the record shows that First Unum continued the review process. Thus, even if the 120-day period ended on December 13, 2004, as Defendants argue, there is no evidence that Plaintiff had done anything to hinder or stop the review process during the 120-day period.

On December 21, 2004, First Unum sent a letter to Plaintiff's counsel requesting complete obstetrical records. (Rafel Cert. Ex. 40.) On December 27, 2004, Plaintiff's counsel wrote to First Unum, revoking all authorizations previously executed by Plaintiff. (Rafel Cert. Ex. 41.) Defendants do not explain how this revocation might have stopped the review process but, even if they did, the 120-day period had already expired. Even accepting Defendants' argument that the period ended on December 13, 2004, on that date, when First Unum failed to issue a decision, Plaintiff's appeal was deemed denied by operation of § 2560.503-1(h)(4), and she exhausted her administrative remedies. See Gatti v. Reliance Std. Life Ins. Co., 415 F.3d 978, 983 (9th Cir. 2005) ("the 'deemed denied' language gives claimants the ability to access the courts if the administrator does not exercise its discretion within a reasonable time (as established by the regulations).") Thus, this Court finds that Plaintiff had exhausted her administrative remedies prior to commencing suit.

The record thus does not support Defendants' argument that the 120-day period should be equitably tolled because of Plaintiff's interference with the review process. Nor does it support Defendants' assertion that Plaintiff "rushed to court" without exhausting her administrative remedies. (Defs.' Br. 4.) Defendants do not explain what else Plaintiff could have done to remedy the situation. The evidence before the Court indicates that Plaintiff had done all that she

7

could do.  First Unum bears the responsibility for not completing the review.  In the absence of evidence showing that Plaintiff is somehow at fault for First Unum's failure to complete the review, there is no equitable basis for tolling.  See also Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 108 (2d Cir. 2005) ("A tolling period cannot delay the expiration of a deadline when that deadline has already expired.")

To the contrary, the record raises questions about First Unum's dealings with Plaintiff. After receiving the November 16 letter, First Unum might have responded by completing its review in the six weeks that elapsed prior to when Plaintiff commenced suit.  First Unum does not even claim that it made a good faith effort to resolve the situation with Plaintiff to make litigation unnecessary.  The record does not suggest that Plaintiff rushed to court but, rather, that First Unum chose to ignore Plaintiff's threat of litigation and failed to meet its obligations in a timely fashion.  It cannot now ask equity to intervene and rule that, although Plaintiff followed the rules and Defendants did not, Plaintiff filed suit prematurely.

Defendants next contend that, even if they have not strictly complied with the 120-day requirement, they have substantially complied with it.  This is problematic on several grounds. First, Defendants do not explain how their compliance has been substantial.  In view of the undisputed fact that, three years after Plaintiff filed her appeal, Defendants have not ever issued a decision, this Court does not perceive how it could conclude that First Unum's compliance with the time limit has been substantial.  First Unum has presented no evidence that it attempted to comply with the time requirement, nor even that it recognized an obligation to complete the review in a timely fashion.

The second problem is that, as will be seen in the discussion that follows, the substantial

compliance doctrine may be relevant when a claimant challenges an administrator's decision, but it is quite problematic to use it to find, in the absence of a decision, that a claimant has no right to sue. Many of the cases on which Defendants rely hold that substantial compliance may be sufficient to prevent upsetting a fiduciary's decision, but First Unum here has failed to issue a decision. See, e.g., Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 690 (7th Cir. 1992) ("In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient. Every procedural defect will not upset a trustee's decision.") Instead, this Court looks to cases in which, like the current one, the administrator made no decision by the deadline but argues that "substantial compliance" can play a role in the exhaustion analysis and, in effect, provide a shield from suit. The Third Circuit has not decided such a case, but other circuits have done so.

The Second Circuit considered "substantial compliance" in this context in 2005 in Nichols, 406 F.3d at 106. The Court observed that substantial compliance, as a doctrine that excuses "technical noncompliance for purposes of review of a plan administrator's discretionary decision," must be differentiated from "the very different question of whether substantial compliance can block or delay a plaintiff's access to the federal courts." Id. at 107. The Nichols Court, facing the latter question, rejected the insurer's "substantial compliance" arguments, stating: "adopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information. Such a result would render the plain language of Section 2560.503-1(h)(1) a nullity." Id.

This Court finds the Second Circuit's analysis persuasive: if the doctrine of substantial

9

compliance is allowed to delay accrual of the right to sue, it permits plan administrators to indefinitely tie up claimants with ongoing requests for information. While substantial compliance may be a useful doctrine when reviewing an administrator's decision, this Court agrees with the Second Circuit that it cannot be used to delay accrual of the right to commence litigation.

The Tenth Circuit performed a very different analysis in Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 634 (10th Cir. 2003), but that Court's thoughtful and persuasive discussion of these issues supports refusing to allow First Unum to use "substantial compliance" to delay accrual of the right to sue. While Defendants quote Gilbertson at length, they omit the relevant holding: "an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator." Id. at 636. Essential to that process is the maintenance of a "meaningful dialogue" between the administrator and the insured. Id. at 635. Even in the context of a meaningful dialogue, however, deadlines are to be observed:

> The deadlines play a crucial role in this 'meaningful dialogue.' Although plan administrators may believe that they have articulated good reasons for their requests for more records or additional diagnostic tests, from the claimant's perspective these requests are often indistinguishable from pointless stalling. In addition, the costs of delay are generally much higher for claimants, who may need disability benefits to buy their daily bread, than for plans and administrators. It would be manifestly unfair to claimants if plan administrators could extend the process indefinitely by continually requesting additional information. The deadlines therefore empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands.

Id. at 635-636. Thus, in the instant case, the 120-day deadline empowered the claimant to call a halt to the evidence-gathering process and to obtain an up or down decision on the record as it stood. The November 16, 2004 letter constitutes such a call to First Unum. First Unum, however, chose not to give a decision on the record as it stood. Instead, it waited until December 21 – beyond the date that even Defendants believe was the deadline – to request additional records. Thus, even if this Court were to find that First Unum was engaged in a meaningful dialogue with Plaintiff – which is certainly open to question – the principle of substantial compliance does not shield an administrator from the right of the claimant to call for a decision when the deadline has passed. The Tenth Circuit thus expressed clearly the same concern that the Second Circuit expressed in Nichols, that administrators should not be allowed to extend the review period indefinitely by issuing requests for new information. Although the path of the Tenth Circuit's analysis differs greatly from the Second Circuit's in Nichols, it arrives at the same conclusion: policy analysis supports finding that "substantial compliance" should not excuse plan administrators from review deadlines.

In the alternative, Defendants contend that, even if this Court determined that First Unum did not timely issue a decision on Plaintiff's appeal within the 120-day period, "the only proper remedy is to remand this matter to First Unum to complete the administrative review of her claim for benefits." (Defs.' Br. 14.) Defendants' arguments in support of this contention fail for several reasons.

In support of their position, Defendants principally rely on the Third Circuit's statement in Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000), that "the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair

11

review." Defendants quote this out of context. The Third Circuit did not create a broad rule that the only remedy for every violation of § 503 was remand, but merely held that the disclosure obligations of § 503 were not enforceable by the sanctions of § 502(c) and should be remedied by remand. The present case does not involve breach of disclosure obligations and is not analogous.

Significantly, Defendants' contention that the only proper remedy is to remand to First Unum so that it may complete administrative review fails as a matter of common sense. Because this Court has determined that Plaintiff exhausted her administrative remedies and accrued the right to sue, this determination is meaningless if all it gives her is a return trip to First Unum to wait longer. Having accrued the right to sue, and having commenced suit in this Court, there can be no question that Plaintiff has the right to have her controversy adjudicated in this Court.

Furthermore, this Court has determined that, pursuant to 29 C.F.R. § 2560.503-1(h)(4), Plaintiff's appeal is deemed denied. An appeal cannot sensibly be deemed denied but then be remanded to the administrator for further action that might undo the Court's decision. The motion in the alternative to remand to First Unum so that it may complete administrative review will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion, styled as a motion to dismiss the Amended Complaint for failure to exhaust administrative remedies, and construed by this Court as a motion for partial summary judgment, is **DENIED**. Defendants' motion in the alternative to remand to First Unum is **DENIED.**

                                                      s/ Stanley R. Chesler
                                                  Stanley R. Chesler, U.S.D.J.

Dated: July 19, 2007